FILED

08 JAN 30 PM 3:34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br>vs.<br>$14,285.00 IN U.S. CURRENCY,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 07-CV-1690 W (NLS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT<br>(Doc. No. 10.) |

　　　On August 27, 2007 Plaintiff United States of America ("Plaintiff") commenced this 21 U.S.C. § 881 drug-related forfeiture action against Defendant $14,285.00 in United States currency ("Defendant"). (Doc. No. 1.) Pending before the Court is Plaintiff's motion for judgment by default as to the interest of all potential claimants against Defendant currency. (Doc. No. 10.) The Court decides the matter on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d.1). For the following reasons, the Court **GRANTS** Plaintiff's motion.

///
///
///
///
///
///

## I. BACKGROUND

On April 5, 2007 special agents with the Drug Enforcement Administration ("DEA") received information about a suspicious airline passenger, Alex Hernandez ("Hernandez"), traveling from New York City, New York to San Diego, California. (*Compl.* ¶ 3.) Hernandez had been a last minute purchaser of a one-way, cash ticket. (*Id.*)

After landing in San Diego, DEA agents observed Hernandez pick up a bag from the baggage carousel and meet another man, Manuel Lucatero ("Lucatero"). (*Id.*) The agents approached both men and asked to speak with Hernandez, who agreed. (*Id.*) Hernandez initially stated that he had been in New York for three days closing a property deal, and that he was carrying $300 in cash. (*Id.*) However, after obtaining Hernandez's permission to search his bag, agents felt bundles of what appeared to be a large amount of currency hidden inside the bag's lining. (*Id.*) In response to the agents' questions, Hernandez stated that he was actually carrying around $13,000.00, proceeds from the sale of Mexican real estate. (*Id.*) Hernandez could not provide any documentation about the supposed real estate sale and admitted that he initially lied about how much money he was carrying. (*Id.*)

The agents then turned their attention to Lucatero. (*Id.*) Lucatero stated that he was simply picking up his brother from the airport, did not know anything about the money, and did not know anything about Hernandez's trip to New York. (*Id.*) The agents discovered that Lucatero had a prior arrest for methamphetamine manufacturing, and his cell phone had recorded an incoming call from New Jersey. (*Id.*)

Hernandez agreed to accompany the agents to the Narcotics Task Force office and discuss the money. (*Id.*) At the office, Hernandez's bag was more thoroughly searched and agents recovered $14,285.00 of U.S. currency, the majority of it in rubber-banded bundles of twenty-dollar bills. (*Id.*) Agents also found paperwork from a hotel indicating that Hernandez had been in New York for one day, and not three days as

previously stated.  (*Compl.* ¶ 3.)  Hernandez did not respond to questions about the discrepancy.  (*Id.*)

When asked about the money again, Hernandez claimed that he received the cash in a paper bag from "Johnny," at a Ramada Inn restaurant, for a real estate deal. (*Id.*) Hernandez could not provide a last name, phone number, or any other identifying information about Johnny.  (*Id.*)  Apparently, Johnny had delivered the money to Hernandez for his father, who resided in Mexico, but Hernandez was unable to document any Mexican real estate transaction, tell agents where the Mexican property was located, or explain why he had to travel to New York to get Mexican real estate proceeds.  (*Id.*)  Agents then learned that Hernandez was on probation for theft conviction and had an active Fourth Amendment waiver.  (*Id.*)

After questioning Hernandez, the agents brought in a narcotic-sniffing K-9 dog to conduct a sniff of the currency.  (*Id.*)  The K-9 alerted to the currency indicating the presence of narcotic odors.  (*Id.*)  The currency was seized and Hernandez left the office.  (*Id.*)

In June 2007, Hernandez presented a document that appeared to be related to Mexican real estate to the Narcotics Task Force Office and the U.S. Attorney's Office. (*Id.*)  However, the document related to a transaction dated May, 7, 2007, over a month after the currency was seized.  (*Id.*)  Hernandez has not responded to requests to provide documentation relating to a property sale closing before April 5, 2007.  (*Id.*)

On August 27, 2007 Plaintiff filed a verified complaint for forfeiture against all claimants to the $14, 285.00 in U.S. currency, alleging that the currency was a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of United States drug laws or, alternatively, alleging that the currency represented proceeds of or proceeds traceable to an exchange for a controlled substance or listed chemical in violation of United States drug laws. (*Compl.* ¶¶ 4, 5.)  On August 29, 2007 a Notice of Judicial Forfeiture Proceedings and a copy of the Complaint were sent by certified mail to potential claimant Hernandez.  (*Mot.*

*for Entry of Def.* 1–2.) On October 15, 2007, because Hernandez had not filed a claim for the funds, the Clerk of the Court entered default against him in favor of Plaintiff. (Doc. No. 7.) On November 28, 2007, after notice was published in the San Diego Commerce on October 5, 12, and 19, the Clerk of Court entered default as to all potential claimants. (Doc. No. 9.) On December 21, 2007 Plaintiff moved for default judgment as to all potential claimants. (Doc. No. 10.) Neither Hernandez nor anyone else has filed a claim of any kind, appeared in this action, or opposed the motion for judgment by default.

## II.   LEGAL STANDARD

The district court has discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where the defendant has been served with the claim; the defendant's default has been entered for failure to appear; if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b).

## III.   DISCUSSION

Plaintiff argues that it has complied with all relevant procedural requirements and deadlines, and that it has established by a preponderance of the evidence that the currency was involved in a violation of United States drug laws. (*Pl.'s Mot.* 4–5.)

The Court agrees.

Under 21 U.S.C. § 881, all monies furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Chapter 13, Title 21 of the United States Code, or all proceeds traceable to such an exchange, are subject to forfeiture to the United States. 21 U.S.C. § 881(a)(6).

| | |
|---|---|
| 1 | The civil forfeiture proceeding is governed by Rule G of the Supplemental Rules |
| 2 | of Admiralty or Maritime and Asset Forfeiture Claims.  Under Rule G(4), the |
| 3 | government must publish notice once a week for three consecutive weeks describing the |
| 4 | property and stating the procedures to file a claim and answer.  The government must |
| 5 | also send notice to any known potential claimants.  Pursuant to Rule G(5), any |
| 6 | potential claimant must file a verified claim with the Clerk of the Court, with a copy to |
| 7 | the Government attorney, within thirty-five days after service of the Notice of Judicial |
| 8 | Forfeiture Proceedings.  An answer must be filed and served within twenty days |
| 9 | thereafter, pursuant to 18 U.S.C. § 983(a)(4)(B). |
| 10 | The burden of proof in civil forfeiture cases is a preponderance of the evidence. |
| 11 | 18 U.S.C. § 983(c).  If the Government's theory of forfeiture is that the property was |
| 12 | used to commit or facilitate the commission of a criminal offense, or was involved in the |
| 13 | commission of a federal offense, the Government shall establish that there was a |
| 14 | substantial connection between the property and the offense.  <u>Id.</u> |
| 15 | The Government has established by a preponderance of the evidence that the |
| 16 | currency was involved in a drug-related transaction or attempted transaction, in |
| 17 | violation of Chapter 13, Title 21 of the United States Code, by submitting a verified |
| 18 | complaint alleging the circumstances surrounding the seizure, the size of the seizure, |
| 19 | Hernandez's suspicious and contradictory behavior, and the K-9 alert.  <u>See Cripps v.</u> |
| 20 | <u>Life Ins. Co.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992) (stating that, in reviewing a default |
| 21 | judgment, a court must take a complaint's well-pleaded factual allegations as true). |
| 22 | Neither Hernandez nor any other person has disputed the facts alleged in Plaintiff's |
| 23 | Complaint or filed any claim to the property. |
| 24 | Moreover, the Government has fully complied with Rule G's notice requirements |
| 25 | by sending the Notice of Forfeiture Proceedings and Complaint to potential claimant |
| 26 | Hernandez and publishing additional notice in the San Diego Commerce for three |
| 27 | consecutive weeks. |
| 28 | /// |

IV. CONCLUSION

The allegations in Plaintiff's verified complaint establish by a preponderance of the evidence that the defendant currency was involved in the violation of United States drug laws, and thus subject to forfeiture under 21 U.S.C. § 881(a)(6). Moreover, Plaintiff has satisfied the procedural requirements established in Federal Rule of Civil Procedure, Supplemental Rule G for Admiralty or Maritime Claims and Asset Forfeiture Actions. No potential or actual claimant has appeared in this action. For the aforementioned reasons, the Court **GRANTS** Plaintiff's motion for judgment by default. (Doc. No. 10.) The Clerk shall enter final judgment for Plaintiff United States of America, and this judgment shall forfeit the interests of all claimants and potential claimants, including Alex Hernandez, in the defendant currency pursuant to 21 U.S.C. § 881(a)(6).

IT IS SO ORDERED.

Dated: January 28, 2008

Hon. THOMAS J. WHELAN
United States District Court
Southern District of California